1
2
3
4
5
6
7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NOELL SIERRA CRUMMETT,                Case No.  2:22-cv-00593-JDP (SS)

12                 Plaintiff,

13        v.                               ORDER

14   KILOLO KIJAKAZI, Acting
     Commissioner of Social Security
15
                     Defendant.
16

17          Plaintiff challenges the final decision of the Commissioner of Social Security

18   ("Commissioner") denying her applications for child's insurance benefits ("CIB") and

19   supplemental security income ("SSI") under Titles II and XVI of the Social Security Act.  Both

20   parties have moved for summary judgment.  ECF Nos. 15 & 20.  For the reasons discussed below,

21   the court denies plaintiff's motion and grants the Commissioner's motion.

22                              **Standard of Review**

23          An Administrative Law Judge's ("ALJ") decision denying an application for disability

24   benefits will be upheld if it is supported by substantial evidence in the record and if the correct

25   legal standards have been applied.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th

26   Cir. 2006).  "'Substantial evidence' means more than a mere scintilla, but less than a

27   preponderance; it is such relevant evidence as a reasonable person might accept as adequate to

28   support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

                                        1

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process, the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

In July 2017, plaintiff filed applications for CIB and SSI, alleging disability beginning December 11, 1998. Administrative Record ("AR") 358-65. After her applications were denied initially and upon reconsideration, plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). AR 64-103, 200-09, 215-26. On September 22, 2020, the ALJ issued a decision finding that plaintiff was not disabled. AR 175-89. The Appeals Council granted plaintiff's request for review, vacated the ALJ's decision, and remanded for further proceedings. AR 196-97.

On June 24, 2021, plaintiff appeared and testified at a second hearing before the ALJ. AR 35-63. On September 10, 2021, the ALJ issued a new decision again finding that plaintiff was not disabled. AR 11-28. Specifically, the ALJ found that:

1. Born [in] 1998, the claimant had not attained age 22 as of December 11, 1998, the alleged onset date.

2. The claimant has not engaged in substantial gainful activity since December 11, 1998, the alleged onset date.

3. The claimant has the following severe impairments: Cerebral Palsy with hemiplegia and borderline intellectual functioning; anxiety disorder; and status post right foot tendon release.

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for a total of 2 hours in an 8-hour workday, in 20 minute increments; she can sit for 6 hours out of an 8-hour workday; she can occasionally push, pull, and/or engage in foot controls with the lower extremities; no ladders, ropes, or scaffolding; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she can frequently reach, handle, and finger with the non-dominant right upper extremity; she should avoid working at heights and around dangerous machinery; she can understand, remember, and apply simple job instructions; she can maintain concentration, persistence, and pace for simple job tasks in 2 hour increments in an 8-hour workday; she can interact with co-workers but not on a teamwork type of work assignment; she should avoid work with the public; she can interact with supervisors; and she can deal with occasional changes in the work setting or routine.

   * * *

6. The claimant has no past relevant work.

7. The claimant was born [in] 1998 and was 0 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education.

3

* * *

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 11, 1998, through the date of this decision.

AR 14-27 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request. AR 1-5. She now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Analysis**

Plaintiff advances four primary arguments. First, she contends that the ALJ failed to consider whether she satisfied Listing 12.05(B). Second, she argues that the ALJ improperly rejected her subjective complaints and her mother's testimony. Third, she argues that the ALJ failed to properly weigh the medical opinion evidence. Finally, she claims that the ALJ erred by concluding that there were sufficient jobs available in the national economy that she could perform.[1] None of these arguments is persuasive.

**A.      Listing 12.05(B)**

Plaintiff argues that the ALJ erred by failing to consider whether her impairments

---

[1] Plaintiff's motion presents these arguments in a different order. The motion also contains several arguments—some consisting of no more than a sentence or two—that are insufficiently developed for the court to evaluate. *See, e.g.*, ECF No. 15 at 17 ("Psycho-educational evaluations. The decision failed to evaluate the school psychologist's reports, pregnant with objective, as well as other, information, including the 69 and 70 [IQ scores], discussed above in argument B.") (emphasis omitted). These arguments are deemed waived. *See Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 (9th Cir. 2001) (finding that the appellant's failure to develop his argument rendered it incapable of assessment by the court); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address whether the ALJ properly rejected claims of

4

1   medically equaled the criteria for Listing 12.05(B).  ECF No. 15 at 11-13.  She asserts that the

2   "record demanded [she] be considered for *equivalency* to listing 12.05B," noting that she received

3   a full-scale IQ score of 74 and that her severe impairments include borderline intellectual

4   functioning.  *Id*. at 11-12.  The Commissioner contends that plaintiff has waived her 12.05(B)

5   argument by failing to raise it at the administrative level.  ECF No. 20 at 23.  Plaintiff's argument

6   is unpersuasive.

7        As an initial matter, the ALJ was not required to evaluate whether plaintiff's impairments

8   were medically equivalent to Listing 12.05(B).  "An ALJ is not required to discuss the combined

9   effects of a claimant's impairments or compare them to any listing in an equivalency

10   determination, unless the claimant presents evidence in an effort to establish equivalence."  *Burch*

11   *v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *see Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir.

12   2001) (holding that the ALJ did not error by filing to consider whether the claimant's impairments

13   equaled when the claimant "offered no theory, plausible or otherwise, as to how his seizure

14   disorder and mental retardation combined to equal a listed impairment"); *Ford v. Saul*, 950 F.3d

15   1141, 1157 (9th Cir. 2020) ("Because the ALJ did not have an obligation to discuss medical

16   equivalency sua sponte, the ALJ did not err in failing to do so.").  Plaintiff did not argue medical

17   equivalency at the administrative level.  Accordingly, the ALJ did not err by failing to perform

18   that evaluation.

19        Plaintiff's failure to raise this issue at the administrative level also forecloses her from

20   properly raising it now.  "[W]hen claimants are represented by counsel, they must raise all issues

21   and evidence at their administrative hearings in order to preserve them on appeal."  *Meanel v.*

22   *Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).  A court will excuse a failure to comply with this rule

23   only "when necessary to avoid a manifest injustice . . . ."  *Id*.  Plaintiff was represented by counsel

24   at the June 24, 2021 hearing.  AR 63-64.  Counsel neither raised Listing 12.05(B) at the hearing

25   nor addressed the listing in the brief submitted to the ALJ.  AR 63-64, 494-95.  Plaintiff also has

26   not demonstrated that a manifest injustice will result if her argument is deemed waived.  Although

27   _____

28   memory problems because the plaintiff "failed to argue this issue with any specificity in his
     briefing").

1   she contends that she satisfies the listing's criteria, she does not identify the specific evidence

2   supporting her position. Instead, she merely faults the ALJ for not considering that listing given

3   her IQ score, which reflects diminished intellectual functioning. Accordingly, plaintiff is

4   foreclosed from challenging the ALJ's failure to consider Listing 12.05(B). *See Mays v. Colvin*,

5   No. 1:13-cv-00904-SKO, 2014 WL 3401385, *12 (E.D. Cal. July 11, 2014) (holding that the

6   claimant waived his argument that he satisfied listing 12.05(C) by failing to raise the issue at the

7   administrative level).[2]

8   **B.**     **Rejection of Plaintiff's and Her Mother's Testimony**

9       Plaintiff argues that the ALJ improperly discounted her subjective complaints and her

10   mother's testimony without providing legally sufficient reasons for doing so. ECF No. 15 at 8-

11   11.

12       In the Ninth Circuit, courts follow a "two-step analysis for determining the extent to which

13   a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th

14   Cir. 2017). "'First, the ALJ must determine whether the claimant has presented objective medical

15   evidence of an underlying impairment which could reasonably be expected to produce the pain or

16   other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir.

17   2014)). If the claimant meets this requirement, the ALJ can reject her symptom testimony only

18   by offering specific, clear, and convincing reasons for doing so. *Id.* "This is not an easy

19   requirement to meet: the clear and convincing standard is the most demanding required in Social

20   Security cases." *Id.* The ALJ's reasons must also be supported by substantial evidence in the

21   record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

22       Plaintiff testified that she is able to perform chores—including doing laundry, cleaning

23

24   [2] Even if the court were to determine that the ALJ should have specifically considered Listing 12.05(B), any error in failing to do so would be harmless. In addition to requiring certain IQ scores, the listing requires deficits in adaptive function manifested by an extreme limitation of

25   one, or marked limitation of two, in the following areas: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentration, persistence, or maintaining

26   pace; and (4) adapting or managing oneself. 20 C.F.R Part 404, Subpart P, Appendix 1,

27   § 12.05(B). In assessing whether plaintiff satisfied Listing 12.11's criteria, the ALJ considered how plaintiff's mental impairments limited her ability to function in each of the four areas. Thus,

28   the ALJ tacitly concluded that plaintiff did not meet or medically equal Listing 12.05(B).

dishes, and cooking meals—although she needs reminders and some assistance from her mother. AR 39, 83, 91.  She can walk for twenty minutes before needing to rest, has no difficulty with sitting, and is able to lift at least ten pounds.  AR 41, 48.  She reported weakness in her right hand that makes it more difficult to perform various activities, including typing, using a razor, styling her hair, and holding objects.  AR 41-44, 74-76, 85.  She can go to the grocery store alone, although her mother frequently accompanies her.  AR 46-47, 79.  She reported having anxiety when in public, AR 80-81, but denied any issues with depression, AR 47.

She also stated that she has difficulty focusing when working on hard tasks.  AR 47.  She endorsed memory problems, explaining that when talking to another person she "can't remember . . . the first few words they said . . . ."  *Id.*  She also reported difficulty in school, noting that she struggled with math.  AR 71.  Although plaintiff testified that she spent most of her time "lounging" at home, she stated that she occasionally attends family gatherings and enjoys reading and riding her quad bike.  AR 52, 87, 89.

In assessing plaintiff's RFC, the ALJ accounted for many of the limitations described in plaintiff's testimony.  However, the ALJ concluded that several of plaintiff's statements were not fully credible.  AR 19-23.  First, the ALJ observed that plaintiff's claim that she cannot remember the first few words that people say to her was inconsistent with her behavior at the hearing.  AR 18.  As observed by the ALJ, plaintiff demonstrated no difficulty remembering and responding to the ALJ's questions.  *Id.*

Plaintiff argues that the ALJ's reliance on her own observations is inappropriate.  ECF No. 15 at 19.  As noted by plaintiff, the Ninth Circuit has been critical of ALJs relying heavily on their own observations in assessing credibility.  *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).  Nevertheless, "[t]he inclusion of the ALJ's personal observations does not render the decision improper."  *Morgan v. Commissioner*, 169 F.3d 595, 600 (9th Cir. 1999).  Here, the ALJ found that plaintiff's allegation that she cannot remember the first words spoken to her was inconsistent with her ability to answer all questions without difficulty.  The ALJ properly relied on this inconsistency to find that plaintiff's alleged memory limitations were not credible.  *See Verduzco*, 188 F.3d at 1090.  This is especially true given that the ALJ did not rely solely on her

own observations in assessing plaintiff's memory.  The ALJ also observed that a psychological evaluation showed that plaintiff had fair memory skills for recently learned information.  AR 21, 554.

The ALJ also properly found that plaintiff's work history—or lack thereof—and rejection of adult services—including those geared at promoting independent living, employment, and education—undermined her allegations of debilitating symptoms.  AR 18; 465, 957.  As observed by the ALJ, the fact that plaintiff has never worked and has declined services intended to, among other things, assist her in obtaining employment, suggests that a lack of desire, rather than disability, may account for her current unemployment.  AR 18; *see Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding that the ALJ properly concluded that the plaintiff's "poor work history" adversely "affected her credibility regarding her inability to work"); *Kellner v. Colvin*, 603 F. App'x 592, 593 (9th Cir. 2015) (unpublished) (holding that the ALJ's finding that the claimant "did not make 'even a good faith effort to find gainful employment' is also a clear and convincing reason to discount her credibility").

The ALJ also properly found that plaintiff's daily activities were not fully consistent with an inability to work.  AR 19.  As observed by the ALJ, notwithstanding plaintiff's complaints of right-hand weakness, she was able to perform household chores—albeit with some reminders or assistance from her mother—ride a quad bike, drive a car, perform personal care, and attend appointments alone.[3]  AR 19, 41-44, 52, 74-76.  Although these activities are limited in nature, the ALJ did not err in concluding that plaintiff's ability to perform these activities demonstrated an ability to frequently perform fine and gross manipulative activities with her right hand, to perform simple job tasks, and to interact with coworkers and supervisors.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).

Finally, the ALJ permissibly concluded that plaintiff's allegations were not fully

---

[3] Plaintiff emphasizes that her quad bike was modified.  ECF No. 15 at 6.  Her mother testified that it had a modified throttle to limit twisting of the wrist.  AR 52.  Notwithstanding the modified throttle, the ALJ reasonably inferred that plaintiff's ability to operate a quad bike demonstrated a reasonable ability to perform manipulative activities with her right extremity. *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (holding that "the ALJ is entitled to draw inferences 'logically flowing from the evidence'").

1    supported by her medical records.  As noted by the ALJ, plaintiff's treatment records regularly

2    reflected that plaintiff was physically healthy.  AR 687 (stating that plaintiff "overall is physically

3    healthy"); 760 (reflecting that plaintiff "is reported to be a generally healthy person"); 958

4    (indicating that plaintiff "is physically healthy overall").  Examinations reflected normal muscle

5    strength in her left extremity and only slightly decreased strength in the right extremity.  AR 548,

6    677-78.  Although her psychological evaluation showed limitations with memory, her mental

7    status examination showed adequate concentration and attention, a fair fund of knowledge, fair

8    memory skills for recently learned information, fair insight and judgment, and a linear thought

9    process.  AR 554.  The ALJ properly concluded that plaintiff's testimony about the severity of her

10   limitations was not fully supported by her medical records.  *See Morgan*, 169 F.3d at 600 (holding

11   that inconsistencies or a lack of support from medical records is a proper basis for discounting a

12   claimant's subjective testimony).  Accordingly, the ALJ provided legally sufficient reasons for

13   her adverse credibility determination.

14        Plaintiff further argues that the ALJ erred by failing to evaluate testimony from her

15   mother, Stacey Crummett.  ECF No. 15 at 6-8.  "[L]ay witness testimony as to a claimant's

16   symptoms or how an impairment affects ability to work is competent evidence, and therefore

17   cannot be disregarded without comment."  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.

18   1996).  "Consequently, if the ALJ wishes to discount the testimony of lay witnesses, he must give

19   reasons that are germane to each witness."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

20   1053 (9th Cir. 2006) (alteration and quotation omitted).[4]  However, "[w]here lay witness

21   testimony does not describe any limitations not already described by the claimant, and the ALJ's

_____

[4] The Commissioner argues that under the 2017 revised regulations, ALJs are no longer required to provide germane reasons for discounting third party statements.  She argues that while such evidence must still be considered, it can be rejected without explanation.  ECF No. 15 at 12-15.  Plaintiff contends that the revised regulations only alter the assessment of medical opinions, and that ALJs are still required to provide germane reasons for rejecting third-party statements.  *Id.* at 7-8; ECF No. 23 at 1-3.  As explained herein, any error in failing to provide germane reasons for rejecting Stacey Crummett's testimony was, at most, harmless.  Accordingly, the court need not decide whether the germaneness standard continues to apply.  *See Weitman v. Kijakazi*, No. 21-35748, 2022 WL 17175060, at *2 n.4 (9th Cir. Nov. 23, 2022) (declining to address the viability of the germaneness standard under the revised regulations because ALJ's decision satisfied that standard).

well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012); *see Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

As observed by the ALJ:

> The claimant's mother testified that she needed to remind the claimant to shower, groom, and do chores. The claimant's mother accompanied her to doctor's appointments. She stated the claimant had a valid driver license, but she did not drive because she was often with her mother who would drive. The claimant's mother also claimed the claimant felt anxiety when driving. The claimant's mother alleged the claimant felt anxious counting and exchanging money with a cashier and picking out food. The claimant's mother contended if the claimant worked consistency would be difficult for her. She alleged that the claimant did not understand that working required her to stick with it even if she was bored, anxious, or frustrated.

AR 18; *see* AR 49-55, 92-93.

This testimony largely mirrors plaintiff's testimony, which the ALJ properly rejected due to, among other things, inconsistencies with plaintiff's medical record. Accordingly, the ALJ's failure to specify why she rejected Stacey Crummett's testimony was harmless. *See Molina*, 674 F.3d at 1117 (holding an ALJ's failure to address lay witness testimony harmless where the ALJ gave valid reasons to reject a claimant's testimony and the lay witness testimony was similar to the claimant's testimony).

## C.    Medical Opinion Evidence

Plaintiff argues that the ALJ erred in weighing the medical opinion evidence. Specifically, she argues that the ALJ erred in rejecting Dr. Michelina Regazzi's opinion and in weighing the medical opinion evidence concerning her ability to perform manipulative activities with her right arm.[5] ECF No. 15 at 13-20.

---

[5] Plaintiff also argues that the ALJ improperly rejected her treating physician's opinion that she will "require permanent support throughout her life by either a parent or guardian." ECF No. 15 at 18-19. The ALJ permissibly found that statement unpersuasive because, among other things, it did not specify any functional limitations. In any event, the ALJ was not required to explain why that statement was rejected, since it is not a proper medical opinion. *See* 20 C.F.R. § 404.1513(a)(2) ("A medical opinion medical opinion is a statement from a medical source about

Under the Commissioner's revised regulations, treating physicians' opinions are no longer entitled to the deference that they enjoyed under the prior regulations' "physician hierarchy." *See Wood v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Consequently, an ALJ is no longer required to provide "specific and legitimate" reasons for rejecting a treating opinion. *See id*. Instead, the ALJ is to evaluate each medical opinion's persuasiveness based on (1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) the provider's specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 416.920c(a), (c)(1)-(5). While all factors must be considered, "supportability" and "consistency" are the primary considerations. 20 C.F.R. § 416.920c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92. "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792. Now, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787. However, the ALJ is still required to "provide a coherent explanation of her reasoning" so that judicial review may be effective. *Sam-Chankhiao v. Kijakazi*, 2022 WL 4222617, *3 (E.D. Cal. Sep. 13, 2022) (citing *Hardy v. Comm'r Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

Plaintiff first argues that the ALJ erred in her consideration of Dr. Regazzi's opinion. ECF No. 15 at 13-15. In March 2017, plaintiff underwent a comprehensive psychological evaluation with Dr. Regazzi, a licensed psychologist. AR 552-58. Based on that evaluation, Dr. Regazzi opined that plaintiff had mild limitations in completing a workday or workweek without interruption; moderate limitations in performing detailed and complex tasks and working without special or additional supervision; and marked limitations in dealing with the normal stresses encountered in a competitive work environment. AR 558. Dr. Regazzi also concluded that plaintiff was not significantly limited in her ability to maintain regular attendance, perform work

---

what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities.").

1    activities on a consistent basis, accept instruction from supervisors, and interact with coworkers

2    and the general public. *Id.*

3          The ALJ concluded that Dr. Regazzi's opinion was partially persuasive, finding that many

4    of the assessed limitations were supported by her own objective findings and consistent with other

5    evidence in the record. AR 18. Plaintiff contends, however, that the ALJ largely ignored Dr.

6    Regazzi's opinion regarding plaintiff's moderate limitations and improperly rejected her

7    conclusion that plaintiff had a marked ability to deal with stress. ECF No. 15 at 13-15.

8          Contrary to plaintiff's contention, the ALJ did not ignore the moderate limitations assessed

9    by Dr. Regazzi. For instance, the ALJ limited plaintiff's RFC to performing simple job tasks in

10    two-hour increments, AR 17, which is consistent with Dr. Regazzi's opinion that plaintiff was

11    moderately impaired in performing detailed and complex tasks. The ALJ also observed that the

12    Dr. Regazzi's opinion was generally consistent with the record, including evidence that plaintiff

13    needed certain information rephrased or simplified. AR 18. However, the ALJ specifically

14    emphasized that Dr. Regazzi did not have the opportunity to review all of claimant's educational

15    records, which showed that plaintiff was able to ask for assistance when needed. *Id.*; *see* AR 569

16    (reflecting that plaintiff "is a very hard working student[; s]he is a diligent worker and asks

17    questions when needed"). Accordingly, the ALJ properly omitted from plaintiff's RFC the need

18    for special supervision or additional instructions. *See Thomas*, 278 F.3d at 554 (holding that

19    courts may not disrupt an ALJ's logical interpretation of the evidence). Likewise, the ALJ also

20    properly rejected Dr. Regazzi's opinion that plaintiff has marked limitations in dealing with stress.

21    AR 18. As noted by the ALJ, that opinion was not well supported by the record, and was undercut

22    by evidence that plaintiff had fair insight and judgment and was able to ask appropriate questions

23    when needed. *Id.* The ALJ reasonably inferred that such evidence undermined Dr. Regazzi's

24    opinion that plaintiff was unable to deal with the normal stresses encountered in a competitive

25    work environment. *See Macri*, 93 F.3d at 544 (holding that the ALJ is permitted to make logical

26    inferences).

27          Plaintiff also argues that the ALJ failed to properly account for the findings from Dr. Rajiv

28    Pathak, a consulting physician who examined plaintiff on two separate occasions. ECF No. 15 at

15-17.  She contends that although Dr. Pathak did not provide an opinion as to plaintiff's manipulative abilities, he did find that plaintiff's right arm had slow coordination and "mild spasticity and weakness."  *Id*. at 15-16; *see* AR 548-49, 678.

Plaintiff's argument is premised on the erroneous assumption that Dr. Pathak did not consider plaintiff's ability to use her right arm.  As is customary in reports completed by consulting physicians' reports, Dr. Pathak's report included an opinion that identified the areas in which plaintiff had functional limitations.  AR 549, 678.  It did not include an exhaustive list of each specific functional activity that could be performed without limitation.  As such, the lack of any manipulative limitations in Dr. Pathak's report does not indicate an oversight.  Rather, the omission reflects Dr. Pathak's opinion that plaintiff was not limited in her ability to use her right arm.  Indeed, Dr. Pathak did not ignore the symptoms resulting from plaintiff's cerebral palsy; he specifically opined that due to her right-sided weakness, plaintiff was limited in performing tests of the amount of weight that she could lift and of her ability to perform postural activities.  .

**D.      Reliance of Vocational Expert's Testimony**

Finally, plaintiff argues that the ALJ erred in relying on the vocational expert's testimony that there were sufficient jobs in the national economy that she was able to perform.  ECF No. 15 at 20-15.  Essentially, plaintiff contends that if they ALJ would have properly assessed her functional limitations, she would not be able to perform each of the jobs identified by the vocational expert.  As explained, the ALJ properly assessed plaintiff's RFC.  Accordingly, this argument also lacks merit.

Accordingly, it is hereby ORDERED that:

1.  Plaintiff's motion for summary judgment, ECF No. 15, is denied.

2.  The Commissioner's cross-motion for summary judgment, ECF No. 20, is granted.

3.  The Clerk of Court is directed to enter judgment in the Commissioner's favor.

1
2   IT IS SO ORDERED.
3
    Dated:    September 29, 2023
4                                                    JEREMY D. PETERSON
                                                     UNITED STATES MAGISTRATE JUDGE
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28